[Cite as *McCulloch v. Janney Montgomery Scott L.L.C.*, 2014-Ohio-4002.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ROBERT McCULLOCH, III, et al., | ) | |
| | ) | CASE NO.    13 CO 40 |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| JANNEY MONTGOMERY SCOTT LLC, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas Court,
Case No. 12CV778.

JUDGMENT:     Affirmed.

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  September 8, 2014

[Cite as *McCulloch v. Janney Montgomery Scott L.L.C.*, 2014-Ohio-4002.]

APPEARANCES:

For Plaintiffs-Appellants:         Attorney Michael McGee
                                   107 Main Avenue, Suite 500
                                   Warren, Ohio  44481


                                   Attorney Anthony Paduano, Pro Hac Vice
                                   1251 Avenue of the Americas, Ninth Floor
                                   New York, New York  10025



For Defendant-Appellee:            Attorney Jerry Santangelo, Pro Hac Vice
                                   Attorney Brody Weichbrodt, Pro Hac Vice
                                   Two North LaSalle Street, Suite 1700
                                   Chicago, Illinois  60602


                                   Attorney Joseph Simms
                                   1660 West 2nd Street, Suite 1100
                                   Cleveland, Ohio  44113-1448

VUKOVICH, J.

**{¶1}** Plaintiffs-appellants Robert McCulloch, III and Hunter Associates Inc., appeal the decision of the Columbiana County Common Pleas Court denying its motion to vacate the arbitration award and confirming the arbitration award in defendant-appellee Janney Montgomery Scott LLC's favor. Three issues are raised in this appeal. The first is whether the cause is moot. The second is whether, in addition to the standard of review espoused in R.C. 2711.10 to use in determining whether an arbitration award is required to be vacated, does Ohio also recognize the "manifest disregard of the law" standard? The third issue is, applying the correct standard of review, did the panel of arbitrators overstep their authority by issuing an award for Montgomery Scott?

**{¶2}** For the reasons expressed below, the judgment of the trial court to deny the motion to vacate the arbitration award is hereby affirmed. We hold that the cause is not moot, and that regardless of what standard is employed, the arbitrators did not exceed their authority in issuing the award.

### Statement of Facts and Case

**{¶3}** In the early 1980s McCulloch opened a financial broker/advisor firm in Salem, Columbiana County, Ohio, that was affiliated with Parker/Hunter Inc. In 2005, that firm branch was purchased by Montgomery Scott for $5 million. McCulloch and his team continued to work for Montgomery Scott; McCulloch was Montgomery Scott's most senior corporate officer at the Salem branch. The record does indicate that McCulloch did not like some of Montgomery Scott's policies and believed that those negatively affected the service he could provide for his clients. The record also indicated that McCulloch did voice these concerns to Montgomery Scott's corporate office.

**{¶4}** On April 8, 2011, McCulloch and most of his management team at Montgomery Scott resigned, walked down the street and began working for Hunter Associates, taking with them a lot of McCulloch's clients. Allegedly, this group departure eventually caused Montgomery Scott to close its office in Salem.

**{¶5}** In May 2011, Montgomery Scott initiated arbitration through FINRA (Financial Industry Regulatory Authority). Montgomery Scott alleged raiding/unfair competition against Hunter Associates; breach of fiduciary duty against McCulloch; tortious inducement of breaches of fiduciary duty against Hunter Associates; civil conspiracy against both McCulloch and Hunter Associates; and tortious interference with actual and prospective business relationship against Hunter Associates. McCulloch and Hunter Associates answered and filed a counterclaim.

**{¶6}** The arbitration hearing lasted 13 days over a span of five months. On November 8, 2012, the arbitrators issued their decision finding McCulloch and Hunter Associates jointly and severally liable for compensatory damages in the amount of $2.4 million plus post-judgment interest. The award does not set forth reasoning. McCulloch and Hunter Associates' counterclaim was denied and dismissed.

**{¶7}** On December 9, 2012, Hunter Associates paid the $2.4 million judgment. However, they failed to pay the interest, which was $12,000.

**{¶8}** On December 10, 2012, McCulloch and Hunter Associates filed a complaint in the Columbiana County Common Pleas Court seeking to have the arbitration award vacated under R.C. 2711.10(D). Montgomery Scott filed an answer and cross motion for confirmation of the award.

**{¶9}** The trial court denied the motion to vacate the arbitration award and confirmed the award. It entered judgment in Montgomery Scott's favor and ordered Hunter Associates and/or McCulloch to pay the remaining $12,000 of the judgment plus interest at a rate of 6% from November 9, 2012 until the $12,000 is paid in full.

**{¶10}** This timely appeal follows, in which McCulloch and Hunter Associates assert three assignments of error. However, prior to addressing the merits of McCulloch and Hunter Associates' appellate brief, we must first address Montgomery Scott's assertion that the case is moot because McCulloch and Hunter Associates paid the principal amount of the award.

<u>Moot</u>

**{¶11}** Montgomery Scott argues that the case is moot because prior to filing the motion to vacate the award in the Columbiana County Common Pleas Court,

Hunter Associates paid the $2.4 million award. Hunter Associates, however, did not pay the $12,000 interest award.

**{¶12}** There is case law that the satisfaction of a judgment renders an appeal from a judgment moot. *Blodgett v. Blodgett,* 49 Ohio St.3d 243, 245, 551 N.E.2d 1249 (1990); *see also Wiest v. Wiegele,* 170 Ohio App.3d 700, 2006–Ohio–5348, 868 N.E.2d 1040, ¶ 12 (1st Dist.); *Art's Rental Equip., Inc. v. Bear Creek Constr., LLC,* 1st Dist. Nos. C–110544, C–110555, C–110558, C–110559, C–110564, C–110785, C–110792, C–110797, C–110798, C–110799, C–110800, C–110801, C–110808, and C–120309, 2012–Ohio–5371, ¶ 7. Absent a fraud upon the court, where a judgment has been voluntarily paid and satisfied, that payment puts an end to the controversy. It takes away "the right to appeal or prosecute error or even to move for vacation of judgment." *Blodgett* at 245, quoting *Rauch v. Noble,* 169 Ohio St. 314, 316, 159 N.E.2d 451 (1959).

**{¶13}** Hunter Associates and McCulloch claim that the matter is not moot. It contends that the arbitration award is not a judgment; the award does not reach the status of a judgment until the award is confirmed by a common pleas court. It also argues that the award has not been fully satisfied and that they were required by FINRA rules to pay the matter within 30 days of the award or face sanctions.

**{¶14}** We do not need to render a holding on whether there is a distinction between an arbitration award and a judgment. At this point in the proceedings, the award has been confirmed and clearly is a judgment. Thus, the argument that an arbitration award is not a judgment provides no basis for this court to find that the cause is not moot.

**{¶15}** That said, the judgment to this point has only been partially paid; the interest is still due. McCulloch and Hunter Associates claimed that they were required to pay the award or they would face sanctions. FINRA Rule 13904 requires awards to be paid within 30 days "unless a motion to vacate has been filed with a court of competent jurisdiction." At oral argument, McCulloch and Hunter Associates explained that there are financial requirements by FINRA for operation and given the size of the award, the only way they could keeping operating the business was to pay

the principal amount of the award. Considering the reason why the principal amount of the judgment was paid and the fact that the judgment has not been fully satisfied, we hold that the matter is not moot.

### Third Assignment of Error

**{¶16}** "The trial court erred by failing to apply the appropriate standard of review."

**{¶17}** The grounds for vacatur, as argued to the common pleas court, were that the arbitrators exceeded their authority, and that they manifestly disregarded the law. The trial court held that the arbitrators did not exceed their authority; the court did not apply the manifest disregard of the law standard. Appellants argue that the trial court erred when it did not apply the manifest disregard of the law standard.

**{¶18}** The grounds for vacation of an arbitration award are set forth in R.C. 2711.10, which provides:

> In any of the following cases, the court of common pleas shall make an order vacating the award upon the application of any party to the arbitration if:
>
> (A) The award was procured by corruption, fraud, or undue means.
>
> (B) There was evident partiality or corruption on the part of the arbitrators, or any of them.
>
> (C) The arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
>
> (D) The arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
>
> If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may direct a rehearing by the arbitrators.

R.C. 2711.10.

**{¶19}** These standards, however, are not the only ones used by courts in determining whether to vacate or confirm an arbitration award. The Federal Sixth Circuit Court of Appeals has recognized the manifest disregard of law standard. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir.1995). That court explained that the manifest disregard of the law standard is an alternative to the statutory grounds and is a judicially created basis for vacation. *Id*. It then went on to explain that this judicially created standard of review is very narrow. *Id*. "A mere error in interpretation or application of the law is insufficient. [*Anaconda Co. v. District Lodge No. 27,* 693 F.2d 35 (6th Cir.1982). *Anaconda [Co. v. District Lodge No. 27],* 693 F.2d [350, 37-38 [(6th Cir.1982)]. Rather, the decision must fly in the face of clearly established legal precedent. When faced with questions of law, an arbitration panel does not act in manifest disregard of the law unless (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Id*.

**{¶20}** *Jaros* cited the United States Supreme Court decision in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182 (1953), for the creation of the manifest disregard of law standard. In *Wilko*, the Court makes a statement that, "the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation." *Id*. at 436-437.

**{¶21}** That said, *Wilko* is a 1953 decision and has been overruled by the United States Supreme Court in *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477 (1989). *Rodriguez* does not discuss the manifest disregard of the law standard, but it does discuss at length the *Wilko* decision. The Court explains that *Wilko* was decided incorrectly and in an era of "judicial hostility to arbitration." *Id.* at 480-481. "To the extent that *Wilko* rested on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants, it has fallen far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes." *Id.*

**{¶22}** Furthermore, to the extent that the *Wilko* decision discusses the manifest disregard standard, it does so in the context of federal courts and the federal arbitration act. While the federal courts may have expanded the review of arbitration awards through case law, it is not clear that the Ohio Supreme Court has done so.

**{¶23}** The Eighth Appellate District has reviewed the manifest disregard of the law standard and has taken the position that the Ohio Supreme Court has not expanded the review of arbitration awards. Accordingly, our sister district has outrightly rejected the manifest disregard of the law standard. *Assn. of Cleveland Fire Fighters, Local 93 of Internatl. Assn. of Fire Fighters v. Cleveland*, 8th Dist. No. 94361, 2010-Ohio-5597, ¶ 11; *Cleveland v. Internatl. Bhd. of Elec. Workers Local 38*, 8th Dist. No. 92982, 2009–Ohio–6223, at ¶ 18–23. In doing so, it has explained that the manifest disregard of the law standard was judicially introduced in the *Wilko* decision and that the Sixth Circuit Court of Appeals has interpreted what that standard is and how it is applied. *Internatl. Bhd. of Elec. Workers Local 38,* ¶ 17-18. The Eighth Appellate District acknowledged that some federal courts have expanded the scope of review for arbitration awards to include a public policy exception, but it rejected the application of that exception to Ohio law because "the Ohio State Supreme Court has refused to expand state court review beyond the clear terms of R.C. 2711.10." *Id.* at ¶ 21. The basis for the rejection was the Ohio Supreme Court's decision in *Warren Edn. Assn. v. Warren City Bd. of Edn.*, 18 Ohio St.3d 170, 480 N.E.2d 456 (1985). *Id.* at ¶ 20, 22-23. In that case, the Court stated, "[T]he vacation, modification or correction of an award may **only** be made on the grounds listed in R.C. 2711.10 and 2711.11 * * *. The jurisdiction of the courts to review arbitration awards is thus statutorily restricted; it is narrow and it is limited." *Id.* at 173. (Emphasis Added).

**{¶24}** That said, it is acknowledged that the Ninth Appellate District has used the manifest disregard of the law standard. *Automated Tracking Sys., Inc. v. Great Am. Ins. Co.,* 130 Ohio App.3d 238, 246, 719 N.E.2d 1036 (9th Dist.1998) (assuming arguendo analysis); *Bennett v. Sunnywood Land Dev., Inc.*, Ohio 9th Dist. No.

06CA0089-M, 2007-Ohio-2154, ¶ 42 (appellant failed to demonstrate how the evidence that was omitted would establish manifest disregard of the law).

**{¶25}** Considering the above, there is support for the position that the manifest disregard of law standard is applicable in Ohio. There is also support for the position that the only means to vacate an award are set forth in R.C. 2711.10 and that the manifest disregard of the law is not applicable. This case, however, does not present us with a situation where we must decide if the manifest disregard of the law standard is the applicable standard for vacatur in Ohio. As is explained below, under either standard the result is the same, the arbitrators' act did not commit error.

First Assignment of Error

**{¶26}** "The trial court erred in affirming the award notwithstanding that there is no cause of action for 'raiding' under Ohio law."

**{¶27}** Appellate review of an arbitration award is confined to an evaluation of the judicial order confirming, modifying, or vacating the award; the substantive merits of the award are not reviewable. *Handel's Ent., Inc. v. Wood*, 7th Dist. No. 04MA238, 2005-Ohio-6922, ¶ 17. Thus, judicial review of an arbitration award is **very narrow**. *Id.* at ¶ 18.

**{¶28}** This assignment of error discusses the four claims asserted against McCulloch and Hunter Associates and argues why the arbitrators allegedly could not have found in Montgomery Scott's favor. Those four claims are raiding/unfair competition against Hunter Associates; breach of fiduciary duty against McCulloch; tortious inducement of breaches of fiduciary duty against Hunter Associates; and civil conspiracy against both McCulloch and Hunter Associates. Appellants assert that neither a raiding or tortious inducement of breach of fiduciary in the employer-employee context are cognizable causes of action in Ohio. As to the breach of fiduciary duty claim, appellants assert that Montgomery Scott did not prove this cause of action, and even if it did, the arbitrators could not hold Hunter Associates jointly and severally liable because the claim was only asserted against McCulloch. As to the civil conspiracy claim, appellants assert that the claim failed as a matter of law because it requires an unlawful act independent from the actual conspiracy.

According to Hunter Associates and McCulloch, raiding and/or tortious inducement of breach of fiduciary duty in the employment context could not be the independent act(s), because those causes of action do not exist under Ohio law.

**{¶29}** Ohio courts have continually recognized that Ohio has a strong public policy that favors arbitration of disputes. *Hogan v. Hogan*, 12th Dist. No. CA2007-12-137, 2008-Ohio-6571, ¶ 14. Once a matter is arbitrated, "the only way to give effect to the purposes of the arbitration system of conflict resolution is to give lasting effect to the decisions rendered by an arbitrator whenever that is possible." *City of Hillsboro v. Fraternal Order of Police, Ohio Labor Council, Inc.* (1990), 52 Ohio St.3d 174, 176, 556 N.E.2d 1186. The purpose of this lasting effect is to honor the parties' decision to circumvent the traditional court-based litigation process. *Hogan* at ¶ 15. "If parties cannot rely on the arbitrator's decision (if a court may overrule that decision because it perceives factual or legal error in the decision), the parties have lost the benefit of their bargain. Arbitration, which is intended to avoid litigation, would instead become merely a system of 'junior varsity trial courts' offering the losing party de novo review." *Midwest Curtainwalls, Inc. v. Pinnacle 701, LLC,* 8th Dist. No. 90591, 2008-Ohio-5134 ¶ 7.

**{¶30}** The arbitrators' authority is derived from the parties' agreement to arbitrate the dispute and is defined and rooted in the arbitration agreement. *Piqua v. Fraternal Order of Police*, 185 Ohio App.3d 496 (2nd Dist.2009), ¶ 21. In collective bargaining agreement cases, it is the collective bargaining agreement that governs. Here, it is membership to FINRA and FINRA's rules that dictates.

**{¶31}** FINRA's Code of Arbitration Procedure for Industry Disputes Rule 13200 states, "Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member [a broker or dealer admitted to FINRA] or an associated person is between or among: Members, Member and Associated Persons; or Associated persons." Two exceptions to mandatory arbitration claims are listed in the code: statutory employment discrimination claims, and dispute arising under a whistleblower statute that prohibits the use of pre-dispute arbitration agreements. FINRA Rule 13201.

**{¶32}** The parties agree that Montgomery Scott and Hunter Associates are both FINRA member firms and McCulloch is an associated person of FINRA. Furthermore, the parties agree that the claims are properly before FINRA and that they do not fall within the exceptions to arbitration.

**{¶33}** Since the parties agree the issues and facts raised were ones that were required to be brought before the FINRA arbitrators, the question we must answer is, if the arbitrators made errors of fact or law, does this mean the arbitrators exceeded their authority or manifestly disregarded the law?

**{¶34}** The Second Appellate District has concluded that errors of fact or law do not provide a basis for vacating the award:

It is because arbitration is a creature of private contract that courts must ignore errors of fact or law. See *Dayton,* 2007-Ohio-1337, 2007 WL 866999, at ¶ 13, quoting *Motor Wheel Corp.,* 98 Ohio App.3d at 52, 647 N.E.2d 844 ("'The limited scope of judicial review of arbitration decisions comes from the fact that arbitration is a creature of contract'"). Parties, by agreeing to allow an arbitrator to resolve their disputes, also implicitly agree to be bound by the mistakes the arbitrator makes while carrying out his charge. See *Dayton v. Fraternal Order of Police* (June 2, 2000), Montgomery App. No. 18158, 2000 WL 706829, *3, citing *Goodyear,* 42 Ohio St.2d at 522, 71 O.O.2d 509, 330 N.E.2d 703 ("When parties agree to submit their disputes to binding arbitration, they agree to accept the result, regardless of its legal or factual accuracy"). The comments to R.C. 2711.10, the statute governing judicial vacation, explain, "The arbitrators are the sole judges of the law and of the evidence and no vacation of an award will be had because of their misconstruction of the facts or of the law." See also *Duckett* (quoting the same) and *Dayton,* 2007-Ohio-1337, 2007 WL 866999, at ¶ 13, quoting *Motor Wheel Corp.,* 98 Ohio App.3d at 52, 647 N.E.2d 844 ("If parties cannot rely on the arbitrator's decision (if a court may overrule that decision because it perceives factual or legal error in the

decision), the parties have lost the benefit of their bargain"). Therefore, an error of fact or law alone is not a reason to vacate an award. *Huber Hts.* ("[A]n error of law or fact, * * * [is] insufficient reason[ ] to vacate the award"). For example, in *Duckett,* we reversed a vacation order grounded on the trial court's disagreement with the arbitrator's understanding of Ohio tort law. Each party had argued in favor of an outcome that it believed the law required. "Although these arguments present interesting questions of law and fact," we said, "this Court may not reach the merits of this case." *Duckett,* 1984 WL 3838, *1. We said that the Ohio Supreme Court's conclusion in *Goodyear* was dispositive of the issue: "'How this or another court might have decided the issue presented to the arbitrator is irrelevant; that decision, by voluntary contract, was left to arbitration.'" *Duckett,* 1984 WL 3838, *2, quoting *Goodyear,* 42 Ohio St.2d at 523, 71 O.O.2d 509, 330 N.E.2d 703; see also *Rathweg Ins. Assoc., Inc. v. First Ins. Agency Corp.* (Aug. 18, 1992), Montgomery App. No. 13184, 1992 WL 206764, *4 ("A court cannot go behind the face of an arbitration award to search for an error of law or fact"). From *Goodyear,* we may derive the fundamental principle upon which arbitral review restrictions rest: a trial court may not substitute its judgment—its view of the facts or law—for that of the arbitrator. See *Rathweg* at *3 ("An award is not reviewable by the courts simply because the arbitrators decided the facts incorrectly, made an error in judgment, or misapplied the law"). Critically then, in reviewing an arbitrator's award, the court must distinguish between an arbitrator's act in excess of his powers and an error merely in the way the arbitrator executed his powers. The former is grounds to vacate; the latter is not.

*Piqua*, 185 Ohio App.3d 496 at ¶ 81.

{¶35} We agree with the above analysis. "Parties who agree to resolve their disputes via binding arbitration agree to accept the result, even if the arbitrator's

decision is based on factual inaccuracies or the arbitrator's incorrect legal analysis." *Hogan*, 2008-Ohio-6571 at ¶ 15.

**{¶36}** Furthermore, we do not agree with McCulloch and Hunter Associates' assertion that this case presents this court with a situation where more than a misapplication of law occurred. Their assertion is based on the claim that raiding and tortious inducement of breach of a fiduciary duty in the employer-employee context are not cognizable causes of action under Ohio law. In making this argument appellants presume that Montgomery Scott is confined to the labels of its claims and that Ohio law applies.

**{¶37}** Under Ohio procedural law, and more importantly the FINRA rules, only notice pleading is required. Civ.R. 8(A); FINRA Rule 13302; *Mounts v. Ravotti,* 7th Dist. No. 07MA182, 2008–Ohio–5045, ¶ 25–26 (the labels used in a particular cause of action do not control the nature of that action); *Dottore v. Vorys, Sater, Seymour & Pease, L.L.P.*, 8th Dist. No. 98861, 2014-Ohio-25, ¶ 35 (cause of action is determined from the "gist of the complaint," not the label assigned to it by a party). The language of the FINRA rule states that the claimant must file with the Director of FINRA Dispute Resolution "a statement of claim specifying the relevant facts and remedies requested." FINRA Rule 13302. Consequently, the focus is on what facts are pled, not the labels.

**{¶38}** This position is best explained by the corporate raiding claim. In the statement of claim filed with FINRA under the label raiding, Montgomery Scott describes the situation where McCulloch and Hunter Associates allegedly worked together to have a large portion of Montgomery Scott's work force in the Salem office quit and go and work for Hunter Associates. This effectively "gutted" the Salem office. This theory could be called corporate raiding, employee raiding or employee pirating. Ohio case law does not state this theory is or is not a cause of action. Regardless of its label, the actions as they are described might fall under Ohio causes of action of unfair competition or tortious interference with a business

relationship[1], to name a few. However, even if they do not qualify as causes of action under Ohio law, that does not mean that the arbitrators exceeded their authority or manifestly disregarded the law.

**{¶39}** The arbitration agreement does not contain a choice of law clause. Likewise, we cannot find anything in the FINRA rules that dictate the choice of law. Moreover, there is no separate agreement in the record before us that indicates that the parties agreed that Ohio would be the choice of law. Admittedly, the parties do cite to Ohio law, however, in the limited record before us of the arbitration proceedings, we note that there are citations to case law from, among others, the federal courts, California, Ohio, Illinois and Pennsylvania.

**{¶40}** Our sister district has explained that an arbitration panel is not bound to apply the law of any jurisdiction. *Banks v. Jennings*, 184 Ohio App.3d 269, 2009-Ohio-5035, ¶ 16. "Being extra-judicial, an arbitrator is generally free to resolve a dispute in a way and for reasons that she alone believes are just, subject only to very limited court review." *Id.*

**{¶41}** Without a choice of law clause, we agree with that statement. That reasoning is persuasive, especially when considering, that this is industry arbitration. Thus, the panel's award should be afforded deference because of the specialized knowledge that the arbitrators have regarding the industry. It could be equated to an administrative agency's determination. In those cases, we consistently acknowledge

---

[1]In Ohio, the tort of interference with business relationships occurs when an individual, without privilege to do so, "induces or otherwise purposely causes a third person not to enter into or continue a business relation with another." *Reali, Giampetro & Scott v. Soc. Natl. Bank*, 133 Ohio App.3d 844, 852 (7th Dist.1999), quoting *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 14, 651 N.E.2d 1283 (1995). The elements of that cause of action are: "(1) a business relationship or contract; (2) the wrongdoer's knowledge of the relationship or contract; (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; (4) a lack of privilege; and (5) resulting damages." *Elite Designer Homes, Inc. v. Landmark Partners,* 9th Dist. No. 22975, 2006–Ohio–4079, ¶ 31. *See also Huffman v. Groff*, 4th Dist. No. 10CA54, 2013-Ohio-222, ¶ 41 ("[t]he elements of tortious interference with a business relationship are: (1) the existence of a prospective business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Morrison v. Renner,* 5th Dist. CT2011–0010, 2011–Ohio–6780, ¶ 21.); *Licul v. Swagelok Co.*, 8th Dist. No. 86322, 2006-Ohio-711, ¶ 28 (A claim of tortious interference with business relationships requires proof of the following

that the agency has expertise in the area, and thus, we afford great deference to the agency's decision. *Zidian v. Dept. of Commerce*, 7th Dist. No. 11MA39, 2012-Ohio-1499, ¶ 48; *Turner v. Goldberg,* 7th Dist. No. 96CA252, 1999 WL 61050 (Feb. 3, 1999). The same reasoning can apply here when dealing with security industry issues.[2]

**{¶42}** Consequently, considering the above and our limited standard of review, the common pleas court correctly confirmed the panel's award and denied the motion for vacatur; and we have no basis to conclude that the arbitrators exceeded their authority or manifestly disregarded the law. This assignment of error lacks merit.

<u>Second Assignment of Error</u>

**{¶43}** "The trial court erred in affirming the award holding Plaintiffs-appellant jointly and severally liable for the entire award."

**{¶44}** McCulloch and Hunter Associates claim that they cannot be held jointly and severally liable because the only claim that was pled jointly and severally was the civil conspiracy claim. They assert that since an underlying wrongful act was not proven, there was no basis to find them jointly and severally liable. This assertion is based, in part, on the claim that raiding and tortious inducement of breach of fiduciary duty in the employer-employee context is not cognizable in Ohio. It was also based on the fact that the civil conspiracy claim was the only claim asserted against both McCulloch and Hunter Associates.

**{¶45}** For the reasons discussed above, this argument fails; the arbitration panel was not bound to apply Ohio law and was free to resolve a dispute in a way and for reasons that it believed were just.

**{¶46}** Furthermore, the entire case was predicated on concerted activity that allegedly caused damage to Montgomery Scott. The remedy section of the

elements: "(1) a business relationship, (2) known to the tortfeasor, and (3) an act by the tortfeasor that adversely interferes with that relationship, (4) done without privilege and (5) resulting in harm.").
        [2]There are two types of arbitrators that FINRA employs – public and non-public arbitrators. http://www.finra.org. Public arbitrators are not required to have knowledge of the securities industry,

statement of the claim asks for any relief that the arbitrators deem just and seeks damages from both McCulloch and Hunter Associates. Thus, there was a basis to order joint and several liability. Therefore, for those reasons, this assignment of error lacks merit.

<u>Conclusion</u>

**{¶47}** In conclusion, the judgment of the common pleas court to confirm the arbitration panel's award and deny McCulloch and Hunter Associates' motion to vacate is hereby affirmed. The cause is not moot and the arbitrators neither exceeded their authority nor manifestly disregarded the law.

Donofrio, J., concurs.
DeGenaro, P.J., concurs.

---

while non-public arbitrators have a more extensive security industry background. *Id.* One of the arbitrators in this panel is a non-public arbitrator having a security industry background.